WILLIAMS, J.
11A Ouachita Parish Grand Jury returned an indictment charging the defendant, Kerry Morris, with felony theft of over $1 million dollars, in violation of LSA-R.S. 14:67(B)(1). As part of a plea agreement with the state, the defendant pled guilty to one count of theft of over $500. He was sentenced to serve 8½ years in prison at hard labor, with three-years of the sentence suspended. He was placed on supervised probation for a period of five years, to begin upon his release from prison. The defendant was also ordered to pay restitution in the amount of $1,249,780, with a credit of $200,000 which previously had been paid. For the reasons set forth herein, we affirm the defendant’s conviction and sentence.
FACTS
The defendant was a 49% owner of Southwest Express, Inc., a trucking company operating out of West Monroe, Louisiana. The other shareholders in the company were Gerald Beene, who financed the start-up of the corporation, and Denise Laurenson, Beene’s daughter. Laurenson also owned 49% of the stock, while Beene owned the remaining 2%. The defendant was a director and the day-to-day operator of the business; Beene was a director and the registered agent for the corporation; and Laurenson was also a director. The defendant was paid an annual salary of $52,000, given a car allowance in the amount of $500 per month and had use of the corporation’s credit card.
In 2004, Laurenson’s daughter was killed in a car accident. Thereafter, Lau-renson and Beene went through a period of mourning, followed by litigation related to the accident. During this period of time, the |2defendant was entrusted with operating the business. In 2006, Beene and Laurenson were notified by their certified public accountant that the business was experiencing a significant decline in profits. They also discovered that the defendant had been diverting customers’ payments into an account that he had opened in the name of “Southwest Express” at Community Trust Bank, rather than depositing the payments in the corporation’s bank account at Capital One Bank.[1]
On November 21, 2006, Laurenson filed a complaint against the defendant with the Ouachita Parish Sheriffs Office, and an investigation commenced. The investigation revealed that the defendant had misappropriated corporate funds from October 10, 2002, through January 1, 2007. Investigators also learned that the defendant had diverted approximately $80,000 per month into his account at Community Trust Bank.[2] The investigation ultimately revealed that the defendant had stolen $1,249,780 from the corporation over a period of approximately four years.
*776 On July 17, 2007, a Ouachita Parish grand jury indicted the defendant with “felony theft between 10 Oct 2002 and 01 Jan 2007 ... totaling over $1,000,000.00 ... contrary to the provisions of R.S. 14:67.” On January 30, 2008, the defendant entered a plea agreement with the state whereby he pled ] 3guilty to one count of theft of over $500. The state agreed that there would be no new charges filed arising out of the defendant’s criminal conduct in this case.[3]
On October 9, 2008, the defendant was sentenced to serve 8⅜ years in prison at hard labor, with the first 5½ years to be served without suspension of sentence; the remaining three years at hard labor were suspended. He was placed on five years’ supervised probation to begin upon his release from incarceration, and was ordered to make restitution in the amount of $1,249,780. The defendant received a credit of $200,000 toward that amount;[4] the five years of probation were ordered to commence upon the defendant’s release from incarceration and to be extended if restitution was not paid during the period of probation. The defendant appeals his sentence and the amount of restitution ordered.
DISCUSSION

Excessive Sentence

The defendant contends the sentenced imposed is excessive and disproportionate to this offense and this offender. He argues that the trial court failed to consider the factors set forth in LSA-C.Cr.P. 894.1, such as |4his age, family obligations and lack of significant criminal history. The defendant also argues that the court failed to consider the “undue hardship” the sentence would create on himself and his family. He further argues that probation would have been the appropriate sentence in this case, and the trial court failed to articulate the reasons why he was not sentenced to probation only.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hamp *777 ton, 38,017 to 38,022 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, 2004-0834 (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense Land the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has broad discretion to sentence a defendant within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for | fithe pled offense. State v. Shirley, 41,608 (La.App.2d Cir.12/13/06), 945 So.2d 267, writ denied, 2007-1394 (La.4/4/08), 978 So.2d 321; State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La. App.2d Cir.5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, writ denied, 2004-0597 (La.9/24/04), 882 So.2d 1165.
LSA-R.S. 14:67 provides, in pertinent part:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
[[Image here]]
In the instant case, the transcript of the sentencing hearing shows that the trial court specifically noted that it had considered the sentencing criteria set forth in LSA-C.Cr.P. art. 894.1. The court stated:
*778 The Court notes as mitigating factors for the sentence, loss of income to you and your family as a result of your incarceration. It will be hard on your son or step-son, your wife, your fellow employees and co-owners of Transport USA. You have accepted responsibility for your actions. You have exhibited remorse and contrition.... You have no previous felony or criminal record.
|7The court also noted that it considered the corporation as the victim in this case, rather than either the defendant, Beene or Laurenson. The court described the defendant as a capable and likeable person, and stated that he was probably not the “worst offender.” Nevertheless, the court noted the magnitude of the loss to the corporation and categorized the defendant’s conduct as “reckless.” The court also noted that the instant case was not the typical theft case, stating:
[T]here is one count of Felony Theft from zero to ten. It did not adequately describe Mr. Morris’s conduct. [T]he case involve[s] numerous thefts on numerous dates in an extended period of time. Theft of monies to the tune of 1.2 million plus from a corporation without the consent or permission of the shareholders. Mr. Morris utilized his position of trust with the other owners as president of Southwest Express to divert money into a separate bank account unbeknownst to the other two majority combined fifty-one percent shareholders of the corporation.... The Court specifically finds that you are in need of correctional treatment and a lesser sentence would deprecate the seriousness of the offense as the theft is 1.2 million.
[[Image here]]
The magnitude of the crime, the large loss, the ongoing nature, the timing of the loss ... was devastating ... as it came on the [heels] of [Laurenson’s] situation involving the death of her daughter.
[[Image here]]
Further, the court stated that the defendant had received a “tremendous benefit” from being charged with only one count of felony theft over $500, when he could have been charged with “hundreds of counts of theft.” The court also noted that the maximum to which he could sentence the defendant was the 10 years provided for in the statute for one count of felony theft over $500.
Considering the trial court’s reasons for sentencing, we find that the | ¡¡trial court adequately considered the factors of LSA-Cr.C.P. art. 894.1 and addressed the applicable mitigating and aggravating factors of the defendant’s case. The trial court clearly noted that the defendant had no criminal history and also observed the defendant’s age at the time of the offense, as well as his obligations to his family and his business. However, the court was particularly influenced by the amount of money the defendant had stolen and the effect it had on Southwest Express, Inc., Beene and Laurenson. The sentence imposed, 8½ years, with 3 years suspended, was within the statutory limits. Furthermore, as noted by the trial court, the defendant received a substantial advantage by the state’s agreement to charge him with only one count of felony theft, when the state could have elected to charge him with multiple counts of theft for various incidents that took place over a prolonged period of time. These facts, in addition to the benefit the defendant received from his plea agreement, unequivocally support the sentence imposed in this matter. Accordingly, we find that the sentence imposed was tailored to fit this defendant and is neither grossly disproportionate to the severity of *779 the offense committed nor an abuse of the trial court’s discretion. This assignment lacks merit.

Restitution

The defendant also contends the amount of restitution ordered by the trial court was “illegal and excessive.” The defendant asserts that the amount of restitution should have been $624,890, with a credit for $200,000, because he owned 49% of the corporation. According to the defendant, the trial court has imposed “excessive compensation and a |9windfall to the remaining corporate shareholder.” The defendant argues that this matter should be remanded to the lower court and the restitution order should be modified.
When the court places a defendant on probation, it may require the defendant to make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court. LSA-C.Cr.P. art. 895(A)(7). LSA-C.Cr.P. art. 895.1 provides, in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subpar-agraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
[[Image here]]
(5) The amount of any judgment by the court hereunder, shall be credited against the amount of any subsequent civil judgment against the defendant and in favor of the victim or victims, which arises out of the same act or acts which are the subject of the criminal offense contemplated hereunder.
* * *
In the instant case, the defendant admittedly stole $1,249,780 from Southwest Express, Inc. Thus, the actual pecuniary loss to the victim — Southwest Express, Inc.— was $1,249,780. Consequently, we find no legal error or abuse of discretion in the trial court’s order that the defendant pay | ^restitution in the amount of $1,249,780 to Southwest Express, Inc. Any amount that the defendant' may be entitled to as a shareholder of Southwest Express, Inc. should be addressed in the civil litigation between these parties. This assignment lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence.
CONVICTION AFFIRMED; SENTENCE AFFIRMED.

. The Community Trust Bank account only required the defendant’s signature for withdrawals.

. For example, the spreadsheets submitted to the detectives had the customers’ names, amounts of receipts, amounts and dates of deposits at Capital One and variances. The spreadsheet for February 2006 showed that a deposit of $275,255 was made, and there was a variance of $29,215.07. The spreadsheet for March 2006 showed a deposit of $318,390.73, and a variance of $28,089.28. The spreadsheet for April 2006, showed a deposit of $255,529.21 and a variance of $23,967.99.

. Following his indictment and arrest, the defendant opened his own trucking company, USA Trucking, and attempted to lure away clients from Southwest Express, Inc. Many of the former drivers for Southwest Express, Inc. began working for the defendant at his new company. Beene died, and Laurenson continued to operate Southwest Express, Inc. Laurenson claimed that her business at Southwest Express, Inc. has been damaged as a result of the defendant’s actions. Southwest Express, Inc. has filed a civil lawsuit against the defendant and Community Trust Bank. That lawsuit is pending and is not the subject of this appeal.

. The credit was for a dividend the defendant had received from the corporation and had already surrendered to the corporation. Implementation of Morris’ sentence was delayed for 30 days so that he could prepare his business for his absence and make arrangements for the care of his 14-year-old stepson.